**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRANDON CANNON, Plaintiff, v. ALLIED UNIVERSAL SECURITY SERVICES, Defendant. | ) | Civil Action No. 25-1794 (ABJ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brandon Cannon worked as a security officer for defendant Allied Universal Security Services ("Allied Universal" or "Allied"), a contractor with the federal government. In that position, he was a dues paying member of a union, Protective Service Officers United ("PSO United"). According to the complaint filed against Allied in Superior Court in April of 2025, [Ex. A to Notice of Removal [Dkt. # 1-2] ("Compl."), Cannon was placed on an administrative hold during the pandemic due to an open Federal Protective Service Investigation, but he was never terminated and retained his active clearance. He alleged that "[u]pon clearance and authorization to return to duty, [p]laintiff attempted to resume his position under the same federal contract. However, Allied Universal failed and refused to reinstate [p]laintiff, despite documentation of continuous service and contract inclusion." Compl. ¶ 5. He filed a three-count complaint against Allied, alleging negligent misrepresentation and breach of duty of care, intentional infliction of emotional distress, and wrongful interference with contractual and economic opportunities. Compl. ¶¶ 8–14. Allied moved to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6), [Dkt. # 10] ("12(b)(6) Mot."), and that motion is fully briefed.[1] After a flurry of other motions were filed and resolved by the court previously assigned to this matter, plaintiff docketed an amended complaint, [Dkt. # 23] ("Am. Compl."), and a motion for a temporary restraining order ("TRO") and preliminary injunction, Emergency Mot. for TRO & Prelim. Inj. [Dkt. # 24] ("TRO & Prelim. Inj."), on August 12, 2025.

In the amended complaint, plaintiff alleges that as a member of the union, he took protected medical leave pursuant to the Federal and Medical Leave Act ("FMLA") and was legally entitled to reinstatement to the same or an equivalent position. Am. Compl. ¶ 2. He asserts that after his leave expired, he was not reinstated to his full schedule, was removed from active assignments, and was otherwise isolated from opportunities. Am. Compl. ¶ 3. The motion for a temporary restraining order and preliminary injunction asked that he be immediately reinstated to full-time employment. TRO & Prelim. Inj. at 3. In support of his request, plaintiff alleged that he would suffer irreparable harm if he was not returned to "active employment" because he would be unable to participate in the PSO United election, including by "nominating, running or voting." Am. Compl. at 1.

Shortly thereafter, plaintiff filed a series of additional motions for emergency injunctive relief, *see* Mot. for TRO & Mot. for Immediate Relief. [Dkt. # 29] and Emergency Mot. for TRO [Dkt. # 30] ("Fourth TRO Mot."), which were largely duplicative of the August 12, 2025 TRO and will be consolidated with that motion for purposes of this ruling, along with a series of similar motions plaintiff filed over the next two weeks: the Amended Motion for Relief and Motion for

---

1 *See* Mem. in Opp. to Mot. to Dismiss [Dkt. # 11] ("12(b)(6) Opp."); Reply to Mot. to Dismiss [Dkt. # 15] ("12(b)(6) Reply").

Preliminary Injunction, [Dkt. # 41], and Motion for Injunction, [Dkt. # 42] ("Inj. Mot."), which was opposed and is also fully briefed.[2]

While considering the pending motions, this Court observed that when plaintiff filed the amended complaint and motion for injunctive related to his job status in August of 2025, a motion to dismiss the original complaint against Allied, which also concerned his job status, was still pending. Since the amended complaint was docketed more than 21 days after Allied responded to the original complaint, plaintiff was no longer able to amend his complaint as a matter of course, and the amended complaint should have been accompanied by a motion for leave to file an amended complaint. It was not. However, while Allied opposed the motion for a temporary injunction in part on the grounds that plaintiff's claims were unlikely to succeed on the merits, *see* Mem. in Opp. to Mot. for a TRO Order [Dkt. # 34] ("TRO Opp.") at 11–12, and it opposed plaintiff's duplicative additional motions for temporary restraining orders on similar grounds, *see* TRO Opp. at 7–8, it did not formally oppose the docketing of the amended complaint other than by requesting that plaintiff be estopped from further filings until the original motion to dismiss was decided. Given all of those circumstances, on August 10, 2026, the Court deemed plaintiff's amended complaint to be a motion for leave to amend, with the amended complaint understood to be the proposed amended complaint he would have been required to submit, and it deemed the opposition to the motion for a TRO to be an opposition to the motion for leave to amend as well. Min. Order (Aug. 10, 2026).

---

2 *See* Mem. in Opp. to Pl.'s First Am. Compl. and Emergency Mot. for TRO and Prelim. Inj. [Dkt. # 44] ("TRO & Prelim. Inj. Opp."); Pl.'s Reply to Def.'s Opp. in Supp. of Emergency Mot. for TRO and Prelim. Inj. [Dkt. # 45] ("TRO & Prelim. Inj. Reply").

For the reasons set forth below and after review of the entire record, the Court will **DENY** all of plaintiff's pending motions for temporary restraining orders and preliminary injunctions, **GRANT** defendant's motion to dismiss the original complaint, **DENY** the motion for leave to amend in part, and establish a schedule for the prompt resolution of the remaining, newly added claim.

## BACKGROUND

According to the original complaint, pro se plaintiff was a protective service officer employed by Allied Universal and assigned to Federal Emergency Management Agency ("FEMA") headquarters in Washington, D.C. Compl. ¶¶ 1, 5. Plaintiff alleges he "was placed on administrative hold during the COVID-19 pandemic due to an open FPS (Federal Protective Services) investigation," Compl. ¶ 4, and "[u]pon clearance . . . to return to duty . . . Allied Universal failed and refused to reinstate [p]laintiff" to the same federal contract with FEMA "despite documentation of continuous service and contract inclusion." Compl. ¶ 5.

On April 25, 2025, plaintiff filed this case in the Superior Court of the District of Columbia. Compl. at 20. Count One alleges negligent misrepresentation and breach of duty of care, Compl. ¶¶ 8–10; Count Two alleges intentional infliction of emotional distress ("IIED"), Compl. ¶¶ 11–12; and Count Three alleges wrongful interference with contractual and economic opportunities, Compl. ¶¶ 13–14. Plaintiff also included in his complaint a list of other "violations of federal law and constitutional principles" for "judicial review." Compl. at 30–32.

Defendant removed the case to the United States District Court for the District of Columbia on June 6, 2025, Notice of Removal [Dkt. # 1] ("Notice") at 1, and the case was initially assigned to another court in this district. On June 13, 2025, defendant filed the pending motion to dismiss for failure to state a claim, 12(b)(6) Mot. at 1, and in addition to opposing that motion, plaintiff

filed a series of motions of his own. He filed two motions to remand, Mot. to Remand to State Court [Dkt. # 5] ("Remand Mot."); Mot. to Remand to State Court [Dkt # 17], which were ultimately denied. *See* Min. Order (Sept. 17, 2025).[3] He also docketed his first motion for a temporary restraining order ("TRO") and preliminary injunction on July 21, 2025 [Dkt. # 19] ("First TRO & Prelim. Inj. Mot."), and an emergency motion to stay his ongoing Chapter 13 bankruptcy proceedings in the U.S. Bankruptcy Court for D.C. on July 23, 2025 [Dkt. # 20] ("Stay Mot."); *See In re Brandon Cannon*, No. 25-bk-00304.

The court denied plaintiff's first motion for a TRO and preliminary injunction on July 28, 2025. Order Denying Pl.'s Mot. for Prelim. Inj. and First TRO & Prelim. Inj. Mot. [Dkt # 21] ("First TRO & Prelim. Inj. Order"). The opinion explained that the motion lacked the necessary showing of irreparable harm:

> [T]he plaintiff does not explain the nature of the harm he faces with regards to his employment. . . . The plaintiff has not shown, or even asserted, that he would face serious financial hardship due to any loss of employment . . . [n]or has the plaintiff explained how his emotional well-being is threatened in the absence of an injunction.

---

3 The Court denied plaintiff's motions for remand "[g]iven that the parties are diverse from one another," *see* Min. Order (Sep. 17, 2025), with plaintiff domiciled in Maryland, and defendant neither incorporated nor having its principal place of business in Maryland. Notice ¶¶ 8–9; Compl. at 2, 20. Further, the amended complaint expressly concedes subject matter jurisdiction and bases its claims on federal law. Am. Compl. at 1–2 ("This Court has jurisdiction under 28 U.S.C. § 1331; 29 U.S.C. § 2617(a)(2) (FMLA); and 29 U.S.C. § 412 (LMRDA)."). Plaintiff also filed a motion for default judgment on July 17, 2025, [Dkt. # 18] ("Default J. Mot."), which was denied on September 17, 2025 because the defendant had filed a responsive pleading. *See* 12(b)(6) Mot.

*Id.* at 1–3. The court also denied plaintiff's emergency motion to stay, ruling that "the [c]ourt does not have jurisdiction over a matter that is a 'core' bankruptcy proceeding" pursuant to 28 U.S.C. § 157(b)(2)(G).[4]

On August 12, 2025, plaintiff docketed his proposed amended complaint, which advanced a new set of factual allegations concerning the reason he was on leave and what he was allegedly denied upon his return. *Contrast* Compl. ¶¶ 4–7, *with* Am. Compl. ¶¶ 1–7. In the amended complaint, plaintiff asserts that he "took protected medical leave under the FMLA" and that "[u]pon conclusion of his FMLA leave, [d]efendants refused to reinstate [p]laintiff to his full schedule, removed him from active assignments, and isolated him from opportunities." Am. Compl. ¶¶ 2–3. The amended complaint consists of four new claims: retaliation in violation of the Family Medical Leave Act, the deprivation of his rights under the Labor-Management Reporting Act, conspiracy to retaliate and interfere with his federally protected rights, and interference with a federally sponsored union election. Am. Compl. at 2. The pleading was accompanied by yet another motion for temporary restraining order and preliminary injunction. Second Mot. For TRO and Prelim. Inj. [Dkt. # 24] ("Second TRO Mot.").

Plaintiff, who describes himself as a "a dues-paying member of PSOs United," Am. Compl. ¶ 1, added the union as a defendant in the caption of amended complaint, but he did not take additional steps to serve the union or add it formally as a party. Am. Compl. at 1. He did file a separate action against the union, and the Court recently dismissed that case without prejudice. *See Cannon v. Protective Serv. Officers United*, No. 25-1676, 2026 WL 2322793 (D.D.C. Aug.

---

4 Plaintiff's bankruptcy petition was later dismissed on June 10, 2026. *See In re Brandon Cannon*, No. 25-bk-00304 [Dkt. # 80].

11, 2026). The amended complaint alleges that plaintiff "received [a] PSOs United Nomination Notice for a federally supervised election scheduled for August 23, 2025, with ballots to be mailed by September 3," and that "[u]nder PSOs United bylaws and supervised-election rules, active employment is required for members to nominate, run for office, and vote." Am. Compl. ¶¶ 4–5. Plaintiff maintains, then, that "[b]y withholding reinstatement, [d]efendants deliberately prevent[ed] [p]laintiff from satisfying 'active employment' eligibility, thereby depriving him of election rights," Am. Compl. ¶ 6, and that "[defendant] and PSOs United have engaged in a coordinated scheme to retaliate against [p]laintiff and suppress his participation in union governance." Am. Compl. ¶ 7. His motion for a TRO sought an order "directing immediate reinstatement of [p]laintiff to active full-time employment with equivalent pay, benefits, and terms . . . ." Am. Compl. at 3. Plaintiff also sought a very expedited schedule for the briefing and consideration of the motion for injunctive relief and the others that immediately followed, but the court held plaintiff did "not identif[y] either in his Motion for a TRO and PI or the Status Report any reason why the Court must issue a ruling on the plaintiff's motion" by his proposed due date. *See* Min. Order (Aug. 16, 2025) ("In particular, the plaintiff does not allege that he would be unable to cast a ballot in the upcoming union election should the Court grant a TRO reinstating his employment after August 23 but before September 3. He mentions that he cannot nominate or run for a union position, but he does not allege that he intends to run or nominate others.").

Shortly thereafter, the case was transferred to this Court pursuant to Local Civil Rule 40.5,[5] and plaintiff has continued to pursue his efforts to obtain interim injunctive relief. Min. Order (Aug. 22, 2025). Because plaintiff is pro se, the Court will consider the later motions as additional

---

5 "[A] case filed by a pro se litigant with a prior case pending shall be deemed related and assigned to the judge having the earliest case." LCvR 40.5(a)(3).

pleadings in support of the August 12, 2025 motion for a TRO and preliminary injunction awaiting decision.

## STANDARD OF REVIEW

### Motions for interim injunctive relief

"A temporary restraining order is an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011), citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Munaf v. Geren*, 553 U.S. 674, 690–91 (2008).

As the Supreme Court explained in *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008), when considering a motion for a temporary restraining order, the Court must consider whether the movant has met its burden of demonstrating that 1) it "is likely to succeed on the merits"; 2) it is "likely to suffer irreparable harm in the absence of preliminary relief"; 3) "the balance of equities tips in [its] favor"; and 4) "an injunction serves the public interest." "The court considers the same factors in ruling on a motion for a temporary restraining order and a motion for a preliminary injunction." *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001). The manner in which courts should weigh the four factors "remains an open question" in this Circuit. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). For some time, the Court of Appeals adhered to the "sliding-scale" approach, where "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (citations omitted). However, the *Sherley* opinion explains that the Supreme Court's decision in *Winter* "seemed to treat the four factors as independent requirements." *Id.* at 393.

Regardless of whether the sliding scale framework applies, it remains the law in this Circuit that a movant must demonstrate irreparable harm, which has "always" been the "basis of injunctive

relief in the federal courts . . . ." *Sampson v. Murray*, 415 U.S. 61, 88 (1974), quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959); *see also Winter*, 555 U.S. at 22 (rejecting that a strong likelihood of success on the merits lessens the movant's burden to showing a "possibility" rather than a "likelihood" of irreparable harm). A failure to show irreparable harm is grounds for the Court to refuse to issue an injunction, "even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

The D.C. Circuit "has set a high standard for irreparable injury" – it "'must be both certain and great; [and] it must be actual and not theoretical.'" *Id.* at 297, quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). In *England*, the Circuit made it clear that "the injury must be beyond remediation."

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation[,] weighs heavily against a claim of irreparable harm.

*Id.*, quoting *Wisc. Gas Co.*, 758 F.2d at 674 (emphasis in original).

<u>Motion to dismiss for failure to state a claim</u>

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly,* 550 U.S. at 555.

The pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (emphasis omitted), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, even though a pro se complaint must be liberally construed, the complaint must nonetheless "present a claim on which the court can grant relief." *Chandler v. Roche*, 215 F. Supp. 2d 166, 168 (D.D.C. 2002), citing *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I. Plaintiff's motion for a temporary restraining order and preliminary injunction will be denied.

The circumstances described by the court when denying plaintiff's first motion for interim relief still pertain today: "[t]he plaintiff's motion fails because he has not shown a likelihood of

irreparable harm, which is alone sufficient to defeat his motion." *See* First TRO & Prelim. Inj. Order at 1, *citing England*, 454 F.3d at 297.

The only harm plaintiff alleges in his amended complaint in connection with his motion for a TRO and preliminary injunction is the loss of his ability to participate in the August 23, 2025 union election. Am. Compl. at 2–3. That election has now occurred, and therefore plaintiff's alleged ineligibility to participate is no longer a harm that the Court can remedy. Moreover, even if the election were still pending, it does not appear that plaintiff is likely to succeed in proving that it was defendant's actions that stood in the way of his participation.

Defendant attached to its opposition PSO United's bylaws, which provide that "[e]very member whose dues are paid up through the month which is prior to the month in which the nominations or election is held shall have the right to nominate, vote for, or otherwise support the candidate of his/her choice." PSO United Bylaws, Ex. B(2) to TRO & Prelim. Inj. Reply [Dkt. 34-4] ("Union Bylaws") at 12. Defendant also submitted a declaration from counsel representing the union in the related matter before the Court. Declaration of Justin Keating, Ex. B to TRO & Prelim. Inj. Opp. [Dkt. # 34-2] ("Keating Decl."). The lawyer for the union averred that "[p]er the [u]nion's records, [p]laintiff has not paid dues to the [u]nion since he last worked at Allied Universal and is not considered to be in good standing with the [u]nion because he is in arrears with respect to dues payments." *Id.* ¶ 7. The union maintains that "it is [p]laintiff's failure to pay union dues—and only [p]laintiff's failure to pay dues—that prevents him from voting or nominating in the election." *Id.* ¶ 13.

Keating also stated in his declaration that a senior investigator with the Office of Labor Management Standards ("OLMS") of the United States Department of Labor "has advised [counsel], in writing, that she spoke with [plaintiff]," and that during that conversation "[plaintiff]

spoke with OLMS about his dues and he confirmed he had not been paying [u]nion dues." *Id.* ¶¶ 9, 14. Moreover, as the court previously assigned to the matter noted when denying the first motion for a temporary restraining order, plaintiff's alleged inability to nominate others or run for office does not warrant interim relief because plaintiff did not allege an intention to do either in his motion or the proposed amended complaint. *See* Min. Order (Aug. 16, 2025).

Putting all of that aside, though, the critical deficiency in plaintiff's motion is the absence of allegations of irreparable harm. In his subsequent duplicative submissions, plaintiff did not respond to any of defendant's factual or legal contentions. Instead, he offers allegations of other harms he has suffered or will suffer, including disruption of his bankruptcy proceedings, Fourth TRO Mot. at 1, "loss of income" and "child support strain," Inj. Mot. at 3, and "deprivation of seniority" and "severe psychological stress." TRO & Prelim. Inj. Reply at 3. None of these are sufficient to support the requests for interim relief; they are highly conclusory, they do not appear in either the amended complaint or plaintiff's original motion, and they do not meet the criteria for irreparable harm. "Where the injuries alleged are purely financial or economic, the barrier to proving irreparable injury is higher still, for it is 'well settled that economic loss does not, in and of itself, constitute irreparable harm.'" *Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 555 (D.C. Cir. 2015), citing *Wisc. Gas Co.*, 758 F.2d 669 at 674. Also, while the Court does not doubt that plaintiff has undergone emotional stress due to his employment situation, he does not explain why that situation could not be ameliorated through other means. And as for any impact on the bankruptcy case, it has been dismissed. *See In re Brandon Cannon,* No. 25-bk-00304 [Dkt. # 80].

## II. The motion to dismiss the original complaint for failure to state a claim will be granted.

Allied moved to dismiss the original complaint under Rule 12(b)(6). *See* 12(b)(6) Mot. Having considered the parties' submissions, the Court concludes that the complaint fails to state a plausible claim for relief and therefore will grant the motion.

First, plaintiff fails to state a claim for negligent misrepresentation or for negligent breach of a duty of care. Plaintiff alleges that Allied owed him a duty to (i) accurately review employment records and (ii) follow federal contractor transition protocols. Compl. ¶ 8. According to plaintiff, Allied's failure to verify his employment status and its classification of him as terminated resulted in his exclusion from rehire and the loss of federal work placement. Compl. ¶¶ 9–10. These allegations do not plausibly state a claim for negligent misrepresentation or negligence based on an alleged breach of a duty of care.

Under District of Columbia law, a claim for negligent misrepresentation requires allegations that the defendant (i) "made a false statement or omitted a fact [it] had a duty to disclose," (ii) concerning "a material issue," and (iii) that the plaintiff "reasonably relied upon the false statement or omission to his detriment . . . ." *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999). The plaintiff also must allege an injury resulting from that reliance, *see Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998), citing *Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 839 (D.C. 1983), and the claim must be pleaded with particularity under Rule 9(b), *see U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (stating that Rule 9(b) requires a pleader to allege "the fact misrepresented and what was retained or given up as a consequence of the fraud") (internal citation and quotation marks omitted). Plaintiff does none of this. He identifies no false statement or material omission by Allied, alleges no facts showing that Allied had a duty to disclose any particular information, and

does not allege that he relied on any representation by Allied to his detriment. Instead, his theory is that Allied inaccurately classified his employment status and consequently failed to rehire or place him in a particular position. Compl. ¶¶ 8–10. Those allegations do not establish the elements of negligent misrepresentation, much less satisfy Rule 9(b)'s particularity requirement. *See Curne v. U.S. Small Bus. Admin.*, 2024 WL 5056355, at *13 (D.D.C. Dec. 10, 2024) (dismissing negligent misrepresentation claim for failure to establish the elements of the claim); *Nwosu v. Yale Univ.*, 2024 WL 4679022, at *6 (D.D.C. Nov. 5, 2024) (dismissing claim for failure to allege a false representation); *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 255 (D.D.C. 2004) (dismissing negligent misrepresentation claim for failure to plead specific allegations supporting the claim).

Plaintiff's negligence or breach-of-duty claim fares no better. To state a negligence claim under District of Columbia law, a plaintiff must establish that "(i) the defendant owed a duty of care to the plaintiff, (ii) the defendant breached that duty, and (iii) the breach of duty proximately caused damage to the plaintiff." *Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 167 (D.D.C. 2017), quoting *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994). The existence of a legal duty is critical: a plaintiff must "specify a negligent act and characterize the duty whose breach might have resulted in negligence liability." *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010), quoting *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982). A complaint cannot rest on "conclusory assertions" regarding the existence of a duty or any other element; rather, it must allege facts showing that the defendant breached a legally imposed duty owed to the plaintiff. *Id.*, quoting *White*, 442 A.2d at 162.

Plaintiff has not done so. His allegations merely recast an alleged employment error – Allied's purported failure to review his employment records correctly and return him to a particular worksite – as a tort claim. Compl. ¶¶ 8–10. But plaintiff identifies no legal basis for imposing on

Allied a tort duty to review his employment records in the manner he demands, to classify his employment status in a particular way, or to return him to a particular worksite or federal placement. Nor does he allege facts establishing any legally cognizable duty independent of the employment relationship itself. Because plaintiff has not identified a legally imposed duty of care, his negligence/breach-of-duty claim fails as a matter of law. *See Simms*, 699 F. Supp. 2d at 227.

Second, plaintiff fails to state a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, he must allege: (1) extreme and outrageous conduct by the defendant; (2) intent or recklessness in causing emotional distress; and (3) severe emotional distress he has suffered. *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980), citing Restatement (Second) of Torts § 46 (1965). Plaintiff alleges, at most, that Allied declined to recognize his asserted employment status and did not resolve his request to return to a particular worksite. Those allegations, even accepted as true, do not approach the level of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . ." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998), quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994). The complaint therefore does not plausibly allege intentional infliction of emotional distress.

Finally, plaintiff fails to state a claim for tortious interference with contractual or economic opportunities. In order to survive a Rule 12(b)(6) motion to dismiss a claim for intentional interference with an economic advantage, plaintiff "must plead (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal citations and internal quotation marks omitted). Plaintiff's allegations

do not satisfy these requirements because they identify no third-party contractual or economic relationship with which Allied interfered. Instead, plaintiff alleges that Allied itself "blocked" his reinstatement to a position with Allied at FEMA. Compl. ¶ 13.

That is not a cognizable claim for tortious interference. An employer cannot interfere with its own employment relationship or contract. *See Hopkins v. Blue Cross & Blue Shield Ass'n*, 2010 WL 5300536, at *8 (D.D.C. Dec. 21, 2010) (dismissing tortious interference claim where plaintiff alleged that her employer interfered with her future employment with that same employer); *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 958 (D.C. 2000) (explaining that it is "axiomatic that an employer cannot interfere with its own contract"). Plaintiff's theory therefore fails at the threshold: the alleged interference was by the very entity with which plaintiff claims to have had the employment relationship.

Because plaintiff has not plausibly alleged any of these causes of action and did not respond to any of defendant's arguments in his reply but instead offered up citations to new and unrelated statutes and inapposite case law, the Court will grant Allied's motion.

## III. The proposed amended complaint does not state a labor-related claim against plaintiff's employer, and therefore, the motion to add Counts II, IV, and that portion of Count III grounded in the LMRDA is denied as the amendment would be futile but granted in part as to Count I and the related portion of Count III.

The proposed amendment would add several claims against Allied arising from plaintiff's alleged inability to participate in a union election. Those claims include Count II, which purports to assert violations of the Labor-Management Reporting and Disclosure Act ("LMRDA"), Count IV, which alleges interference with a federally supervised union election, and the portion of Count III that similarly invokes the LMRDA. As defendant explained in its opposition to plaintiff's motion for a temporary restraining order, those claims are not cognizable against plaintiff's employer. *See* TRO Opp. at 11–12. The LMRDA provides a cause of action to vindicate rights

secured to members of a labor organization, but the statutory rights at issue here concern the relationship between a union and its members – not the employment relationship between a union member and his employer.

The statutory text confirms this conclusion. Section 101 of the LMRDA provides that "[e]very member of a labor organization" shall have specified rights "within such organization," including equal rights and privileges "to nominate candidates" and "vote in elections or referendums of the labor organization . . . ." 29 U.S.C. § 411(a)(1). Section 412, in turn, authorizes a civil action by "[a]ny person whose rights secured by the provisions of this subchapter have been infringed" and specifically provides for an action "against a labor organization." 29 U.S.C. § 412. The statutory structure therefore makes it clear that the LMRDA provisions invoked by plaintiff regulate the rights of union members within their union and provide a remedy for infringement of those rights by the labor organization, rather than creating a general federal cause of action against an employee's separate employer.

The D.C. Circuit has recognized that the LMRDA is directed to the relationship between union members and their labor organizations. In *Wildberger v. American Federation of Government Employees, AFL-CIO*, 86 F.3d 1188, 1193 (D.C. Cir. 1996), the Court explained that Congress enacted the LMRDA to protect workers from abuses by unions and emphasized that the Act applies according to its statutory definition of "labor organization." More recently, the Circuit reiterated that the LMRDA's "bill of rights" protects union members and provides a private cause of action for violations of those rights. *Bastani v. Am. Fed'n of Gov't Emps., AFL-CIO*, 70 F.4th 563, 565 (D.C. Cir. 2023), quoting *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354 (1989). Consistent with that framework, courts have held that the LMRDA does not provide a cause of action against an employer for conduct that does not itself constitute an infringement by

a labor organization of rights protected by the Act. *See Wiggins v. United Food & Com. Workers Union, Loc. No. 56*, 420 F. Supp. 2d 357, 365 (D.N.J. 2006), *aff'd*, 303 F. App'x 131 (3d Cir. 2008) (stating LMRDA "only regulates the relationship between the union and its members" and does not provide a claim against the member's employer) (citation omitted); *Gilmore v. Loc. 295, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 798 F. Supp. 1030, 1038 (S.D.N.Y. 1992) (finding LMRDA does not regulate the relationship between an employer and its employees).

That principle forecloses Counts II and IV as pleaded here. Count II alleges that plaintiff's rights to participate in a union election were violated under the LMRDA. But those rights arise from plaintiff's membership in the union, not from his employment with Allied. Allied is not the labor organization whose election is at issue, and plaintiff does not allege facts showing that Allied itself possessed or exercised authority over his rights as a union member. Count IV suffers from the same defect. Plaintiff characterizes Allied's conduct as interference with a federally supervised union election, but the LMRDA does not transform an employer's allegedly adverse employment conduct into an actionable infringement of internal union rights. Indeed, defendant Allied has no authority to determine whether plaintiff is eligible to participate in the union election, and plaintiff does not allege that Allied took any action governing his membership, voting eligibility, nomination rights, or other rights within the union.

Nor can plaintiff avoid this defect by recasting the LMRDA theory as a conspiracy in Count III. To the extent Count III alleges that Allied and PSO United conspired to interfere with rights protected by the LMRDA, the underlying LMRDA theory against Allied remains unavailable. A conspiracy allegation does not supply a cause of action where the substantive statute does not impose liability on the defendant for the conduct alleged. Because Allied is plaintiff's employer,

rather than the labor organization whose internal affairs and member rights are regulated by the LMRDA, the LMRDA-based portion of Count III is also futile.

The result is different, however, with respect to Count I and the portion of Count III predicated on FMLA. Defendant's argument in opposition to plaintiff's motion for a temporary restraining order did not contend that plaintiff's FMLA allegations failed to state a claim under Rule 12(b)(6). Rather, defendant challenged the likelihood of success on those claims based on declarations and other evidence submitted in opposition to the requested preliminary relief. Specifically, in its opposition, defendant cited portions of a declaration by Dean Daproza, a Regional Human Resources Manager at Allied. *See* TRO Opp. at 10–11; Ex. A to TRO Opp. [Dkt. # 34-1] ("Daproza Decl."). Defendant contended, in substance, that the evidence established that plaintiff had not suffered a materially adverse employment action because, before his FMLA leave, he was not working any shifts and had declined the schedules Allied had offered him, and that he was returned to the same employment status after his leave. TRO Opp. at 10–11, citing Daproza Decl. ¶¶ 6–7, 9–11. Those evidentiary arguments may ultimately bear on the merits of plaintiff's FMLA claim, but they do not establish at this stage that the proposed pleading itself fails to state a claim.

The distinction matters. A motion for leave to amend is properly denied as futile when the proposed claim could not withstand a motion to dismiss. But the Court should not resolve disputed factual matters or weigh competing evidence in determining whether the proposed amendment states a claim on its face. Here, defendant has not identified a pleading deficiency in Count I comparable to the categorical legal defect in plaintiff's LMRDA claims. Instead, defendant's challenge depended upon factual assertions concerning plaintiff's work status before and after his leave, the schedules offered to him, and his responses to those offers. Those matters may be

appropriate for resolution on a properly supported motion for summary judgment, but they do not warrant denying leave to amend on futility grounds.

Nor does plaintiff's failure to respond substantively to defendant's evidentiary contentions warrant treating the FMLA allegations as abandoned at this juncture. Plaintiff has had multiple opportunities to address the declarations and exhibits submitted in connection with the opposition to the TRO and to dispute defendant's factual account. He has not done so. But plaintiff was not specifically directed to respond to those evidentiary submissions on pain of having judgment entered against him on the underlying FMLA claims. The Court therefore will not treat those claims as conceded merely because plaintiff did not rebut defendant's evidence in the TRO proceedings. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016) (holding that a motion for summary judgment cannot be deemed conceded for want of opposition).

Accordingly, the Court will permit the proposed amendment to proceed to the extent it asserts a claim under the FMLA in Count I and a related conspiracy claim in Count III. The Court expresses no view at this time as to whether plaintiff will be able to prove those claims or prevail on a properly supported motion for summary judgment. The Court simply holds that defendant's factual challenges to the likelihood of success on those claims do not establish that amendment would be futile.

The motion to amend is therefore denied as to Count II, Count IV, and the portion of Count III that rests on the LMRDA, because those claims do not state a cognizable LMRDA claim against plaintiff's employer. The motion is granted as to Count I and the portion of Count III alleging a conspiracy to interfere with plaintiff's FMLA rights.

## IV. The Court will treat defendant's opposition to Count I of the proposed amended complaint as a motion for summary judgment since it relies on evidence outside the record.

Giving plaintiff the benefit of all inferences and all of the protections to which he is entitled under the Federal Rules of Civil Procedure, what's left of the case is an amended Count I and the related portion of Count III. In opposing plaintiff's motion for a temporary restraining order, defendant has set out its grounds for why this claim fails on the merits with exhibits and declarations. For that reason, its challenge to the claim cannot be decided under Rule 12(b)(6), and the Court will treat defendant's briefing on this topic as a motion for summary judgment on the FMLA count.

The Court notes, though, that there are significant variations between plaintiff's original allegations that he was on leave in order to participate in a federal investigation and terminated upon his return, *see* Compl. ¶¶ 4–7, and the amended allegations that he was on family medical leave, and that he was not assigned to a comparable position upon his return. *See* Am. Compl. ¶¶ 2–3. These differences will have to be explained, and one scenario or the other will have to be verified. And the record now includes material that indicates that Allied has been working with plaintiff for some time to identify a suitable position, and may have in fact done so. So if plaintiff's employment situation has been resolved, he is welcome to inform the Court of that circumstance, and the case can be closed as moot.

If plaintiff seeks to pursue the claim that Allied interfered with his rights under the Family Medical Leave Act, though, he is advised as follows:

A motion to dismiss for failure to state a claim under Rule 12(b)(6) may be treated as a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), which can dispose of remaining claims against Allied.

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But before the Court rules on the motion, the plaintiff will have an opportunity to respond.

In *Neal v. Kelly*, the Court of Appeals stated that the district court must inform a pro se litigant that, on a motion for summary judgment, "any factual assertion[s] in the movant's affidavits will be accepted . . . as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." 963 F.2d 453, 456 (D.C. Cir. 1992) (emphasis in original), quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). The Court specified that the "text of Rule 56(e) should be part of the notice" issued to the pro se litigant. *Id.*

Rule 56(c) of the Federal Rules of Civil Procedure provides:

> (c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
>
> . . . .
>
> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. Pro. 56(c) (emphasis omitted).

Thus, parties such as plaintiff, who are on the opposing side of a motion for summary judgment must rebut the moving party's affidavits with evidence, such as other affidavits or sworn statements; mere statements that the moving party's affidavits are inaccurate or incorrect are not sufficient. For these purposes, a verified complaint may serve as an affidavit. *See Neal*, 963 F.2d at 457–58.

Accordingly, it is **ORDERED** that by September 18, 2026, plaintiff must respond to the portion of defendant's August 22, 2025 opposition to plaintiff's August 12, 2025 motion for a temporary restraining order, which the Court has deemed to be a motion for summary judgment on Count I and the related portion of Count III of the amended complaint. That is, **plaintiff must respond to Section III (C)(i) of the opposition to the TRO on pages 9–11 of [Dkt. # 34], and the declaration of Dean Daproza, [Dkt. # 34-1], on or before September 18, 2026**. If plaintiff fails to file a timely response, the Court will accept any facts set forth in defendant's motion for

summary judgment as true, and it may decide the matter in defendant's favor without the benefit of plaintiff's position.

**CONCLUSION**

For the foregoing reasons, all of plaintiff's pending motions for a temporary restraining order and/or a preliminary injunction are **DENIED**, defendant's motion to dismiss the original complaint is **GRANTED**, what the Court has deemed to be plaintiff's motion for leave to amend the complaint is **DENIED IN PART AND GRANTED IN PART**, and plaintiff's response to what the Court has deemed to be defendant's motion for summary judgment on Count I and the related portion of Count III of the amended complaint is due on September 18, 2026.

Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: August 19, 2026